**In the Matter of The COMMUNITY HOSPITAL OF ROCKLAND COUNTY, Debtor.**

**Bankruptcy Nos. 79 B 20074, 79 ADV 2004.**

United States Bankruptcy Court, S. D. New York.

Dec. 27, 1979.

---

Ballon, Stoll & Itzler, New York City, by Ronald Itzler and M. David Graubard, New York City, for debtor.

Robert B. Fiske, Jr., U. S. Atty., by Stuart M. Bernstein, Asst. U. S. Atty., New York City, for the Government.

## DECISION ON COMPLAINT RE: DETERMINATION OF PREFERENCE PAYMENTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor, The Community Hospital of Rockland County, has filed a complaint in an adversary proceeding against the Government, and specifically, the Internal Revenue Service, to obtain a release of funds that were seized under the Government's prepetition levies. The debtor needs these funds in order to meet its payroll tomorrow. The Government opposes the debtor's action on grounds of lack of jurisdiction and sovereign immunity. The facts are not disputed.

On December 14, 1979, the debtor filed its petition for relief under Chapter 11 of the Bankruptcy Reform Act of 1978. The debtor is now operating as a debtor-in-possession in accordance with Code § 1107.

On and between November 14, 1979, and December 10, 1979, the Government, through the Internal Revenue Service, served notices of levy upon various third parties who were then indebted to the debtor. The aggregate debt owed to the debtor hospital by third persons, such as Blue Cross, Blue Shield, Rockland County Department of Social Services, New York City Department of Social Services, Citibank, Nanuet National Bank, Aetna Life and Casualty, Group Health, Inc. and New York State Department of Social Services, exceeds the sum of $100,000.00.

To date, the Internal Revenue Service has collected under its levies the sum of $38,502.89, which it has applied to the debtor's tax obligation with respect to the first quarter of the calendar year 1977. The taxes currently owed by the debtor exceed $703,000.00.

The debtor operates a hospital in Rockland County, New York. Its payroll for its employees must be met tomorrow, December 28, 1979. Accordingly, when the debtor filed its summons and complaint yesterday, December 26, 1979, it also presented an order which this court signed shortening the Government's time to answer to today, December 27, 1979, which date was also fixed for the trial. Because of the shortness of time involved, the debtor was only prepared to go forward with its first cause of action directed to Code § 724. The second cause of action asserts an alleged preference received by the Government. The third cause

of action is directed to obligations arising after the levy.

The debtor's gross payroll for the two week period ending December 8, 1979, aggregated $92,144.99. Pursuant to an order of this court dated December 14, 1979, this payroll was paid on December 14, 1979.

The debtor now seeks an order directing the Government to release $92,144.99 to meet its payroll for tomorrow. The debtor argues that the funds in question are priority expenses. As such, the debtor urges under its first cause of action that the Government's tax lien must be subordinated to such priority expenses, in accordance with Code § 724(b).

Because of the gravity of the situation, including the potential closing of a hospital providing essential health services to the community in which it is located, the court afforded the parties an opportunity to attempt to resolve the financial dilemma, at least as to the payroll needed for tomorrow. After telephone communications with the Internal Revenue Service, the Government advised the court that it would not consent to a release of any levied funds for payroll purposes because of the debtor's financial history, the amount of taxes owed and the fact that the problem will reoccur each subsequent payroll period.

Since the parties have not been able to arrive at an understanding which would result in the release of funds from the Government's levy to meet tomorrow's payroll, it is therefore imperative that this court immediately resolve the questions posed by the pleadings and the factual presentation.

The debtor states in its complaint that its payroll consists of wages earned within ninety days of the filing of the petition and that no individual wage payment exceeds $2,000. Therefore, the complaint alleges that this payroll would afford a priority claim under Code § 507(a)(3), which provides as follows:

"§ 507. Priorities.

(a) The following expenses and claims have priority in the following order: . .

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance and sick leave pay—"

However, since this payroll covers wages due after the filing of the petition for relief, it constitutes an administrative expense within the meaning of Code § 503(b)(1)(A), which relates to:

"[T]he actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case" . . .

As a § 503(b) administrative expense, the payroll expense qualifies as a first priority under Code § 507(a)(1), which refers to "administrative expenses allowed under Section 503(b)."

Advancing from the premise that its payroll is a priority expense under Code § 507, the debtor then reasons that the Government's tax lien is subordinated under Code § 724(b)(2) to such priority claim.

The pertinent language in Code § 724(b)(2) is as follows:

"(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for taxes, or proceeds of such property, shall be distributed—

.    .    .    .    .

(2) [S]econd, to claims specified in Sections 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), and 507(a)(5) of this title, to the extent of the amount of such tax claim that is secured by such tax lien;"

.    .    .

The debtor concludes that since the payroll expense is a priority to which the Government's tax claim must be subordinated, it follows that such priority expense funds are property of the estate within the meaning of Code § 541 and should be turned over to the debtor in accordance

with Code § 542(a).* This syllogism, however, is not based upon a sturdy foundation.

The government opposes the debtor's conclusion that the levied funds are property of the estate to the extent of the payroll priority for wages and cites the recent decision in *Bush Gardens, Inc. v. United States of America,* No. 79–0001 (Bk.Ct.N.J. Nov. 21, 1979; Hill, B.J.), where the Bankruptcy Court held that a liquor license levied upon and seized by the Government for the collection of taxes pursuant to 26 U.S.C. § 6331, prior to the filing of a petition under the Bankruptcy Code, is not "property of the estate" within the meaning of Code § 541. The decision, however, is based upon the holding in *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) and *In re Pittsburgh Penguins Partners,* 598 F.2d 1299 (3 Cir. 1979). These cases were decided prior to the effectiveness of § 541 of the current Bankruptcy Code. Under § 541, the Bankruptcy Court is no longer concerned with who has title or possession. Code § 541(a) states that the commencement of a case creates an estate and that such estate includes:

"all legal or equitable interests of the debtor in property as of the commencement of the case."

Indeed, the court in *Bush Gardens, Inc.,* supra, expressed no opinion with respect to a pre-filing seizure by a secured party under Article 9 of the Uniform Commercial Code or a pre-filing levy to enforce a judgment in favor of a private party. Thus, solely for purposes of a pre-filing levy by the Internal Revenue Service, the Bankruptcy Court felt compelled to follow the more restricted pre-Code view of what constitutes "property of the estate".

■ This court need not decide whether or not it agrees with the *Bush Gardens, Inc.* case cited by the Government, because a determination that the debtor's payroll

expense funds are or are not property of the estate is irrelevant. The debtor's first cause of action, pitched to the subordination of tax liens under Code § 724(b), must fail because this section applies only to distributions in liquidation cases under Chapter 7. Code § 724 was derived from Section 67c(3) of the former Bankruptcy Act and is intended to solve certain circuity of liens problems that arise in connection with the subordination of tax liens to administrative expense and wage claims. See *House Report* No. 95–595, 95th Cong., 1st Sess. (1977) 382, U.S.Code Cong. & Admin.News 1978, p. 5787. Code § 724 is not applicable to reorganization cases under Chapter 11. This point is expressed in Code § 103(b), which states:

"Subchapters I and II of Chapter 7 of this title apply *only* in a case under such chapter." (Emphasis added)

Since Code § 724(b) is contained in Subchapter II of Chapter 7 of the Bankruptcy Code, it is expressly inapplicable to this case.

Hence, the debtor's first cause of action must be dismissed.

■ The Government also maintains that the entire complaint must be dismissed because it did not file a claim in this case and has not waived its sovereign immunity from suit. It should be noted that the debtor's complaint is not addressed to a determination of its tax liability. Manifestly, the Bankruptcy Court has authority under Code § 505 to determine any unpaid tax liability of the debtor that has not been contested or adjudicated before the commencement of the case. The complaint seeks a release of funds embraced under the Government's prepetition tax levies.

■ Reference must be had to Code § 106 in ascertaining the extent of the Government's waiver of sovereign immuni-

---

* § 542. Turnover of property to the estate.
  (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or

that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

ty. This section provides for a limited waiver of sovereign immunity in bankruptcy cases. See *House Report* No. 95–595, 95th Cong., 1st Sess. (1977) 317; *Senate Report* No. 95–989, 2d Sess. (1978) 29–30, U.S.Code Cong. & Admin.News 1978, p. 5787. Code § 106(a) is inapplicable since it is conceded that the issue before the court does not involve a compulsory counterclaim to any governmental claim. Therefore, consideration must be given to Code § 106(b), which provides as follows:

> "(b) There shall be offset against an *allowed claim* or interest of a governmental unit any claim against such governmental unit that is property of the estate." (Emphasis added)

This subsection has the effect of waiving the Government's sovereign immunity for the purpose of the setoff of claims. Since the Government has not filed any claim in this case, it may properly assert that it has not waived its sovereign immunity. In light of the Government's assertion of sovereign immunity, this court is constrained to conclude that it lacks jurisdiction to entertain the debtor's complaint, which therefore must be, and is, dismissed.

IT IS SO ORDERED.