## In re WESTHOLT MANUFACTURING, INC., Debtor.

### Bankruptcy No. 79–11668.

United States Bankruptcy Court, D. Kansas.

May 12, 1982.

Christopher J. Redmond, Wichita, Kan., trustee.

Sharon A. Werner, Wichita, Kan., and Glen R. Dawson for IRS.

Richard L. Schodorf; Wichita, Kan., for debtor.

James D. Oliver, Wichita, Kan., for creditor Fouston, Siefkin, Powers & Eberhardt.

Charles F. Harris, Wichita, Kan., for creditor Lotha Maydell Gartin.

David G. Arst, Wichita, Kan., for creditor Richard Whitehall.

John K. Pearson, Wichita, Kan., Asst. U. S. Trustee.

## MEMORANDUM AND ORDER SUSTAINING OBJECTION TO CLAIMS

ROBERT B. MORTON, Chief Judge.

### STATEMENT OF THE CASE

Debtor Westholt Manufacturing, Incorporated filed a voluntary petition under Chapter 11 of the Bankruptcy Code[1] on October 5, 1979. Thereafter, on July 21, 1980, the court confirmed the debtor's Amended Plan of Reorganization.[2] The case, however, was subsequently converted on application of the debtor to a case under Chapter 7 of the Code on June 15, 1981. After conversion of the case, the Internal Revenue Service filed a claim in the amount of $92,737.11 (claim number 105) on February 17, 1981 for unpaid employment taxes for the third and fourth quarters of 1980 and unpaid unemployment taxes for 1980, plus accrued interest and penalty. A second claim for $113,409.21 (claim number 153), representing unpaid employment taxes for the first and

1. 11 U.S.C. § 1101 et seq.

2. File Document 64.

second quarters of 1981, unpaid unemployment taxes for 1981, plus accrued interest and penalty, and accrued interest and penalty on the employment taxes from the first and second quarters of 1980, was filed by the Internal Revenue Service on July 17, 1981. Both claims were filed as administrative claims.

The trustee objects to the Internal Revenue Service's claims contending the claims are incorrectly classified and should properly be allowed as priority claims under Code section 507(a)(6).[3] The claimant, however, insists the claims are allowable as administrative expenses under section 503(b)(1)(B)(i) of the Code.[4] The issue confronting the court, therefore, is whether a tax liability incurred by the debtor after commencement of a case under Chapter 11, but before the case is converted under Code section 1112,[5] constitutes a tax "incurred by the estate" and, thus, an administrative expense under section 503; or, on the other hand, whether such claims should be ranked lower with entitlement to priority only under section 507(a)(6).

## MEMORANDUM

Allowed unsecured claims of governmental units for certain income or gross receipts taxes, property taxes, taxes required to be withheld, employment taxes, excise taxes, customs duties and penalties in compensation for actual pecuniary loss as to any of these taxes or customs duties are entitled to a sixth priority under section 507(a)(6) of the Bankruptcy Code. Although the instant tax claims are entitled to a sixth priority under this section, the United States contends the claims should nevertheless be given higher administrative status under section 503. Section 503(b)(1)(B)(i) allows as an administrative expense any tax "incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title." Literally interpreted, section 503(b)(1)(B)(i) would appear to deny administrative status to a tax incurred by the trustee or debtor in possession after commencement of the case to the extent it is given a priority by section 507(a)(6). That such a result was intended, however, is not certain.

It is not absolutely plain that the mere fact that a tax is given priority as a pre-petition tax would render such tax ineligible for administrative expense status if incurred by the trustee in the operation of the business following the filing of the petition. . . .

. . . [I]t should seem that where the trustee has incurred liability for a tax required to be collected or withheld because the trustee employed persons for wages, salaries or commissions as an incident to preserving the estate during the course of the administration, that tax liability should be an administrative expense.

. . . It would seem on its face, that section 503(b)(1)(B)(i) would exclude as an administrative expense such a tax incurred by the trustee after the filing of the petition as an incident to an actual, necessary cost and expense of preservation of the estate including hiring of people for wages or salaries. On the other hand, it would seem logical that to the extent that the trustee is liable as employer to collect and withhold from such employees as he employs, unpaid taxes predicated upon such withholding ought be (sic) entitled to expense of administration status. It would seem logical that Congress in section 503(b)(1)(B)(i) did not mean to interdict as a tax entitled to administrative expense status any kind of a tax described in section 507(a)(6). Rather, it would seem likely that all that was meant was that to the extent a debtor's pre-petition liability became a tax claim after the petition, it would not for that reason be given administrative expense status under section 503(b)(1)(B). So, on the other hand, it would seem appropriate to suppose that Congress did not mean to deny administrative expense

---

**3.** 11 U.S.C. § 507(a)(6).

**4.** *Id.* at § 503(b)(1)(B)(i).

**5.** *Id.* at § 1112.

status to a tax claim incurred by the trustee as the result of his operation of the business or as the result of those things he found necessary to preserve the estate merely because the kind of tax incurred by the trustee is a tax given priority under section 507(a)(6).

3 Collier on Bankruptcy paragraph 503.-04[b], at 503–21–23 (15th ed. 1980) (footnotes omitted).

■ The court determines that section 503(b)(1)(B)(i) should be interpreted as denying administrative claim status to taxes that are not incurred in the operation of the debtor's business *after* the filing of the petition. This interpretation, however, does not preclude any kind of tax described in section 507(a)(6) from being allowed as an administrative expense. Thus, a tax given priority status under section 507(a)(6) and predicated on pre-petition liability incurred by the debtor *before* the filing of the petition should not be promoted to a first priority administrative expense merely because it is assessed after the petition is filed. On the other hand, actual, necessary costs and expenses of preserving the estate, including taxes on, measured by, or withheld from wages, salaries, or commissions for services rendered after the commencement of the case *and incurred by the estate*, should not be denied administrative status merely because in character the claims resemble claims for taxes described in section 507(a)(6). *See* 3 Collier on Bankruptcy paragraph 503.04[b], at 503–23 (15th ed. 1980). Therefore, the court concludes that post-petition taxes incurred by the estate, although within the kinds of taxes listed in section 507(a)(6), may nevertheless be allowed as administrative expenses under section 503(b). The follow on question, then, is whether the instant taxes are taxes "incurred by the estate."

The United States contends that until a case is closed pursuant to a final decree at the consummation of the Chapter 11 plan, the bankruptcy estate remains in existence and the court retains jurisdiction over the reorganization plan so that employment and unemployment taxes incurred by the debtor in possession following confirmation of the plan are taxes incurred by the estate and, thus, properly categorized as administrative expenses. In support of its position, the United States cites Interim Bankruptcy Rule 3010(b), adopted as Local Rule 3010 B. by the United States Bankruptcy Court for the District of Kansas. The rule states:

On consummation of the plan, the court shall enter a final decree which shall contain provisions (1) stating the effect of confirmation and consummation on the creditors and equity security holders of the debtor; (2) discharging the trustee, if any; (3) making such provisions by way of injunction or otherwise as may be equitable; and (4) closing the estate.

Under this rule, argues the United States, the bankruptcy estate continued to exist after confirmation because the plan had not been consummated.

Interim Bankruptcy Rule 3010(b) and its local counterpart repeats verbatim the language of Chapter X Rule 10–309(b) of the Rules of Bankruptcy Procedure. Rule 10–309(b), in turn, is derived from section 228 of the Bankruptcy Act,[6] which provides for entry by the judge of a final decree upon consummation of the plan. Under the Bankruptcy Code, however, confirmation of a Chapter 11 plan has nearly the same effect under section 1141(d)[7] as consummation of a plan under section 228 of the Bankruptcy Act. Indeed, section 1141(d) is derived from section 228 of the Bankruptcy Act. Part 3 1979 Collier Pamphlet Edition § 1141(d), comment at 538–39 (1979). The consequences of consummation, therefore, are less significant under the Code than under the Act because the property of the estate is vested in the debtor and the debtor discharged under the Code upon *confirmation* of the plan, and, thus, prior to its consummation.

■ Pursuant to the above discussion, the court concludes that taxes incurred by a

---

6.  11 U.S.C. § 628 (1976).

7.  11 U.S.C. § 1141(d).

debtor-in-possession subsequent to confirmation of the Chapter 11 plan are not taxes "incurred by the estate" under section 503 of the Code. Other provisions of the Code lend support to this view. The automatic stay of section 362[8] remains in effect while a Chapter 11 plan is pending confirmation. Upon the plan's confirmation, and simultaneous discharge of the debtor under section 1141(d), however, the automatic stay terminates pursuant to section 362(c) and creditors may proceed to collect *post-confirmation* debts from the debtor. At confirmation, all the property of the estate is vested in the debtor, thereby terminating the estate's existence, although the court has continued jurisdiction under section 1142[9] to oversee the plan's execution. Thus, taxes incurred by the debtor in possession after confirmation are to be treated as pre-petition claims in a subsequent conversion of the case.

> Section 348(d) of the Code provides that: A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.[10]

In accordance with the above findings and conclusions, the court determines that the instant taxes that were incurred by the debtor-in-possession after confirmation do not constitute claims specified in section 503(b) and, therefore, are to be treated as pre-petition debts entitled to priority under section 507(a)(6).[11]

### ORDER

Based upon the foregoing memorandum which constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure

IT IS ORDERED that the subject claims of the Internal Revenue Service of the United States herein for $92,737.11 and $113,409.21 registered, respectively, as claim numbers 105 and 153 are denied 11 U.S.C. § 507(a)(1) first priority as administrative expenses and allowed as sixth priority claims under 11 U.S.C. § 507(a)(6).

8. *Id.* at § 362.

9. *Id.* at § 1142.

10. *Id.* at § 348(d).

11. Because the instant decision is dispositive of the government's claim for administrative expenses, it is unnecessary for the court to address the contention raised by another claimant entitled to administrative expenses that the government did not, merely by filing its proof of claim, comply with section 503(a), which requires that an entity file "a *request* for payment of an administrative expense." 11 U.S.C. § 503(a) (emphasis added).