**In re FRANK MEADOR BUICK, INC., Debtor.**

**Bankruptcy No. 7–80–00436.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

April 14, 1986.

Hutcherson, Rhodes & Furrow, Rocky Mount, Va., for debtor.

Willis, Damico & Apgar, Roanoke, Va., for Ray Dobbins.

Plunkett & Logan, Roanoke, Va., for L.O. Brown.

U.S. Atty., Roanoke, Va., for IRS.

George A. McLean, Jr., Roanoke, Va., Trustee.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

This case is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for consideration of what effect the conversion of the case to a case under 11 U.S.C. Chapter 7 had on a previous Order of Distribution entered by this Court on May 27, 1983) [*In re Frank Meador Buick, Inc.*, 31 B.R. 28 (Bankr.W. D.VA 1983)].

Briefly stated, the facts appear as follows. Frank Meador Buick, Inc. filed its Chapter 11 petition in this Court on April

23, 1980. On December 18, 1980, an Order was entered confirming the proposed plan of reorganization.

Thereafter, the reorganized company became delinquent in payment of withheld employee income taxes and Federal Insurance Contribution Act (FICA) taxes for the third and fourth quarters of 1981 and the first quarter of 1982. The company was also delinquent in Form 940 Federal Unemployment Tax Act taxes for 1981.

On June 14 and 16, 1982, the IRS properly filed and perfected tax liens for these taxes together with penalties and interest. The unpaid balances reflected on the lien notices are as follows:

| | |
|---|---|
| 3rd Quarter 1981 | $21,173.42 |
| 4th Quarter 1981 | 23,535.23 |
| 1st Quarter 1982 | 11,192.70 |
| 1981 940 Taxes | 1,976.03 |

Other amounts incurred post-confirmation and the creditors owed are as follows:

| | | |
|---|---|---|
| Ray Dobbins | $60,830.54 | Rent |
| L.O. Brown | 12,937.98 | Rent |
| Virginia Employment Commission (VEC) | 779.60 | Employment Taxes |
| Houck Advertising | 8,000.00 | Advertising Expense |
| Shenandoah Tire | 276.10 | |
| Air Products | 143.56 | |

By entry of an Order on June 28, 1982, this Court approved the bulk sale of the corporation's inventory to Charles H. Johnson for $70,000.00. The sale was made "free of liens with all liens as to their validity, amount, and priority impressed upon the proceeds as hereafter determined by the Court." The proceeds were placed in an interest bearing escrow account pending further Court Order.

On September 27, 1982, the Court ordered partial distribution to two secured creditors in satisfaction of their security interests in the inventory, withholding distribution of the remaining $40,599.89. On May 27, 1983, this Court entered an Order of Distribution (hereinafter referred to as the 1983 Order of Distribution) directing the Trustee to distribute the funds to the U.S. Bankruptcy Court for postage expenses and to the IRS for costs incurred at the direction of this Court for an appraisal of the inventory conducted prior to sale. Distribution was also ordered to Counsel for the Creditors' Committee, Debtor's Counsel, and Counsel for a secured creditor who had an interest in the inventory. The Court directed further distribution *pro rata* for the "actual and necessary administrative expenses" of Ray Dobbins, L.O. Brown, IRS, VEC, Houck Advertising, Shenandoah Tire, and Air Products, as no issue was raised as to these claims. The essential issue at the time was one of equitable marshaling only. *See* 31 B.R., at 30.

The Distribution Order was appealed to the United States District Court for the Western District of Virginia by the party denied marshaling and affirmed on January 11, 1984. Thereafter, IRS appealed the Order of the District Court to the Fourth Circuit Court of Appeals. While pending in that court, the case, upon Debtor's motion, was converted to a case under Chapter 7 on July 17, 1984. Upon the conversion, IRS moved the Fourth Circuit to dismiss its appeal as moot and remand the case for further action. On October 23, 1984, the Court of Appeals granted the motion and entered an Order vacating the Orders of the Bankruptcy and District Courts "to the extent that they determine the priority and the status of the claim of the Internal Revenue Service." The case was remanded "to the Bankruptcy Court for consideration of the effect, if any, that the conversion of the proceedings has on the claim of the Internal Revenue Service. The Bankruptcy Court may reinstate its judgment pertaining to the priority and status of this claim *or it may enter any other Order as it deems appropriate.*" (emphasis added)

Hearing was held by this Court on March 18, 1986 for a determination of an appropriate Order pursuant to the Fourth Circuit's remand. The Trustee reported a balance on hand of $51,363.35. The Court, by consent of the parties, entered an Order per-

mitting the Trustee to disburse $1,388.47 for the Trustee's fee in the Chapter 7 administration, as well as the postage and appraisal expenses and attorneys' fees previously ordered distributed in the 1983 Order of Distribution. The Court also allowed distribution to a post-petition wage claimant entitled to priority status under § 507(a)(3). Prior to argument, the Court announced to Counsel that in light of the Fourth Circuit's directive, it considered the matter as one "before the court to completely rule on all matters involving distribution of the funds in the hands of the Trustee", and that they should make their recommendations accordingly. Following hearing, the issues were taken under advisement and Counsel were given a period of time within which to ask leave to present additional evidence on any matters relating to the case in accordance with their view of the remand. No request has been filed.

Briefly stated, claimants Ray Dobbins and L.O. Brown contend that their claims for rent in the post-confirmation/pre-conversion period should be paid as outlined in the 1983 Order of Distribution, which labeled them as administrative expenses. As such, they would be paid under § 507(a)(1) ahead of the IRS. Counsel for the Debtor contends that the expenses incurred post-confirmation are unsecured claims and not administrative in nature and that the IRS is entitled to payment under § 507(a)(7)(A) prior to payment of these general unsecured claims. The IRS also contends that post-confirmation expenses are not administrative expenses, but advocates that distribution should be made in accordance with 11 U.S.C. § 724(b).

11 U.S.C. Section 103 outlines the applicability of the Chapters of Title 11 in Bankruptcy proceedings. Section 103(b) provides that subchapters I and II of Chapter 7 apply only in cases under that Chapter.

Thus, upon conversion of a case from a case under Chapter 11 to a case under Chapter 7, §§ 701–728 become applicable. It is necessary to examine these provisions to determine what effect conversion had upon the 1983 Order of Distribution.

The provision relevant to this litigation is § 724, which outlines the treatment of certain liens. Section 724(b) provides:

"(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), or 507(a)(5) [1] of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate."

■ It is recognized that § 724(b) is inapplicable to a case under Chapter 11, but

---

1. Although the text of § 724(b)(2) refers to Sections 507(a)(1)–(a)(5), it should probably read to refer to Sections 507(a)(1)–(a)(6). Section 507 was amended by the *Bankruptcy Amendments and Federal Judgeship Act of 1984*, Pub.L. No. 98–353. The 1984 amendment added a new priority at § 507(a)(5) relating to individual farmers and fishermen, and redesignated the existing subsections (a)(5) and (a)(6) as (a)(6) and (a)(7). However, the 1984 amendment failed to amend the cross references to Section 507 in Section 724 and other Code provisions to reflect this redesignation.

may be applied, as in this instance, when the case is converted to a case under Chapter 7. *Matter of Community Hospital of Rockland County,* 5 B.R. 7, 5 C.B.C.2d 895, 5 B.C.D. 1115 (Bankr.S.D.NY 1979), *aff'd* 5 B.R. 11, 5 B.C.D. 1172 (S.D.NY 1980); *In re Roamer Linen Supply, Inc.,* 30 B.R. 932 (Bankr.S.D.NY 1983). The effect of § 724(b) is to treat a tax lien as a claim ahead of the priority for taxes under § 507(a)(7) and after the other priorities outlined under § 507(a) rather than as a secured claim. 4 *Collier on Bankruptcy,* ¶ 724.03[1] at 724–6 (15th Ed.1985); 124 Cong.Rec.H 11,098 (daily edition, Sept. 28, 1978), S 17,415 (daily edition, Oct. 6, 1978). Accordingly, the tax lien is treated as a claim between the sixth and seventh priorities of § 507(a). 124 Cong.Rec.H 11,098 (daily edition, Sept. 28, 1978); Bnk-L.Ed., *Code Commentary and Analysis,* § 32:17.

In simple terms, § 724(b) provides that property or proceeds of such property that is subject to a tax lien shall be distributed first to the holders of liens senior to the tax lien. § 724(b)(1); 4 *Collier on Bankruptcy, supra,* at 724–7; *Pearlstein v. Small Business Administration,* 27 B.R. 153, 8 C.B.C.2d 267 (D.D.C.1982). Second, distribution is made to the priority claimants of § 507(a)(1)–(a)(6) up to the amount of the tax claim secured by the lien. § 724(b)(2). In other words, under § 724(b)(2), money representing the amount of the tax lien should be set aside. 4 *Collier on Bankruptcy, supra.* The priority claimants of § 507(a)(1)–(1)(6) step into the shoes of the tax collector and are entitled to payment up to that amount. H.Rep. No. 95–595, 95th Cong., 1st Sess. 382 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Third, pursuant to § 724(b)(3), any portion of the amount so set aside which is left after payment of the priority claimants under § 724(b)(2) should be applied to the tax lien. Fourth, lienholders junior to the tax lien are to be satisfied. Fifth, distribution should be made to satisfy the tax lien to the extent it was not paid under § 724(b)(3). § 724(b)(5). Finally, any remaining property goes to the estate for distribution under the provisions of § 726.

As noted previously, the IRS filed of record notices of tax liens on June 14 and 16, 1982 (approximately two years prior to the conversion to Chapter 7) for the taxes incurred in the period after confirmation of the Chapter 11 Plan and prior to conversion of the case to a case under Chapter 7. Upon conversion to Chapter 7, the proceeds from sale of the property were subject to this tax lien, and § 724(b) would be applicable. The Trustee has not sought to avoid the tax lien.

The central question in determining the appropriate Order of Distribution is whether the claims of Dobbins and Brown for post-confirmation rent constitute administrative expenses under § 503(b) such that they are entitled to payment under § 724(b)(2) as § 507(a)(1) priority claims ahead of the IRS lien under § 724(b)(3). For the reasons stated herein, we find that they are not.

Dobbins contends that this Court has previously determined in the 1983 Order of Distribution that the rent owed is an administrative expense. He claims that the Court heard sufficient evidence enabling it to enter the 1983 Order, that the 1983 Order is a final Order, and that the character of the expenses determined therein cannot be changed pursuant to the Fourth Circuit remand Order. We must disagree. The Fourth Circuit has expressly vacated the 1983 Order of Distribution and we are not bound by that previous determination. The Fourth Circuit stated that this Court could reinstate the 1983 Order or enter any other Order deemed appropriate. The case was remanded to this Court to determine the effect of conversion on the claim of the IRS. Resolution of this issue and consideration of any amount to which the IRS may be entitled in distribution will necessarily affect the other claims in the case. At hearing, the Court in effect advised Counsel as such, and provided time to produce additional evidence to support their respective positions. Thus, an examination of the nature of the claims is appropriate.

Section 503(b) provides for allowance of administrative expenses and states in relevant part:

"After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."

It is clear that only those obligations of a debtor's estate which arise post-petition and fall within the parameters of § 503(b) are entitled to treatment as administrative expenses. *In re Boogaart of Florida, Inc.*, 23 B.R. 157 (Bankr.S.D.FL 1982). Section 503 is silent as to the point in time at which the expenses of a debtor in reorganization cease to be accorded first priority administrative expense status. However, the language of § 503(b) suggests that for "actual, necessary costs and expenses" to be afforded administrative expense status, they must be incurred for "preserving the estate."

The filing of a Bankruptcy petition creates an estate. 11 U.S.C. § 541(a). The estate is comprised, with certain exceptions, of all legal or equitable interests of the debtor in property as of the commencement of the case. *Id.* In a case under Chapter 11, the estate continues until confirmation of the Plan under § 1129, at which time all of the property of the estate vests in the debtor. 11 U.S.C. § 1141(b). After that time, the estate is no longer in existence. Thus, costs and expenses incurred in a Chapter 11 case post-confirmation cannot be said to have been incurred for "preserving the estate" such that they are administrative expenses under § 503(b)(1)(A).

Several recent cases support this interpretation. In *In re Barker Medical Co., Inc.*, 55 B.R. 435 (Bankr.M.D.AL 1985), the debtor filed a petition under Chapter 11 and the plan of reorganization was confirmed by the court. Thereafter, several creditors obtained summary judgment against the debtor and costs of the case were taxed against the debtor. The creditors sought to have these costs allowed as an administrative expense in the Chapter 11 case. In denying the request, the Bankruptcy Court for the Middle District of Alabama concluded that:

"Administration of the estate ended with confirmation of the plan. The costs were not incurred by the estate, but were incurred by the debtor after discharge and after confirmation at a time when no estate existed. The confirmation of the plan vests all of the property of the estate in the debtor in this case. By definition, the costs cannot be administrative expenses." 55 B.R. 436.

In so holding, the court cited with approval the case of *In re Westholt Manufacturing, Inc.*, 20 B.R. 368, 6 C.B.C.2d 1068 (Bankr.D.KS 1982), the facts of which are almost identical to the instant case. In *Westholt*, the debtor filed its Chapter 11 petition in October, 1979. The plan of reorganization was confirmed in July, 1980. The case was subsequently converted to a case under Chapter 7 on June 15, 1981. The IRS sought to have post-confirmation taxes allowed as administrative expenses under § 503(b)(1)(B)(i). The court considered whether such taxes incurred "after commencement of a case under Chapter 11, but before the case is converted under Section 1112, constitute a tax 'incurred by the estate' and, thus, an administrative expense under Section 503 ...'" (footnote omitted). 20 B.R. 370.

The court concluded that these post-confirmation taxes were not § 503(b)(1)(B) administrative expenses "incurred by the estate" because the estate terminated upon confirmation of the plan. *Id.* at 372. Rather, in light of § 348(d)[2], the "taxes in-

---

**2.** 11 U.S.C. § 348(d) provides:
"A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had

curred by the debtor-in-possession after confirmation are to be treated as pre-petition claims in a subsequent conversion of the case." *Id.* Accordingly, the taxes were entitled to priority under § 507(a)(6).

On appeal in *United States v. Redmond,* 36 B.R. 932 (D.KS 1982), the United States District Court for the District of Kansas affirmed the *Westholt* decision, reiterating that "since the Bankruptcy estate is no longer being administered by the Trustee or the debtor-in-possession, taxes which accrue post-confirmation are not incurred as actual, necessary costs and expenses of preserving the estate." 36 B.R. 934.

In the Order appealed, the claims as administrative expenses were challenged as to neither their nature nor their amount. IRS also raised no issue as to its secured status as it now raises and asserts in this Chapter 7 case. At the hearing upon remand, IRS now challenges this status and claims that its secured status now should prevail or that it occupies a priority under § 724(b).

■ Upon confirmation of the Chapter 11 Plan by this Court on December 18, 1980, the property of the estate vested in the Debtor and the estate ceased to exist. 11 U.S.C. § 1141. As in *Westholt* and *Redmond,* where there was no estate to be preserved such that post-confirmation taxes could be given administrative expense status, there was no estate in this instance to be preserved such that the post-confirmation expenses for rent can be classified as administrative in nature. The expenses incurred post-confirmation were incurred by the Debtor in the ordinary course of conducting its reorganized business. As the court noted in the *Redmond* Opinion, the "post-confirmation creditors of the reorganized debtor are no longer restrained by the automatic stay in Bankruptcy which terminates when the property of the estate vests in the reorganized debtor ..." 36 B.R. 934; *see* 11 U.S.C. § 362(c). At that time, the creditors were free to pursue available measures to collect their post-confirmation debts from the debtor or to seek

arisen immediately before the date of the filing

security for their claims. IRS sought to do so by filing and perfecting the tax liens. On the subsequent conversion of the case to a case under Chapter 7, in light of § 348(d), only IRS has a secured status, and the remainder of the claims for post-confirmation expenses would be unsecured.

At hearing on remand, Dobbins contends that the post-confirmation rental payments should be considered as administrative expenses in that they allowed the Debtor to continue with operation of its business prior to conversion; that without the premises in which to conduct business, there would have been no reorganized company, no sale of the assets, and no funds generated to be divided among creditors.

■ The introductory language of § 503(b) states that "administrative expenses" are those "including" the ones listed in the numbered subsections. As § 102(3) indicates, the word "including" is not limiting and, therefore, it is possible for other claims besides those enumerated in § 503(b) to be administrative expenses. Upon confirmation of a plan, the Bankruptcy Court retains jurisdiction to supervise consummation of the plan. *See* 11 U.S.C. § 1142. Expenses incurred at the direction of the Bankruptcy Court to assist in such supervision might, under appropriate circumstances, be considered administrative in nature. One such expense was present in this case—the cost of the inventory appraisal conducted prior to the bulk sale of the property.

The language of § 503(b) does not afford administrative expense status to the claims for rent in this case. Having thoroughly reviewed the record of this case, including the arguments presented by Counsel at hearing in 1983 on the appropriate Order of Distribution, we do not believe that the rental claims are different in kind from any of the other expenses incurred by the Debtor post-confirmation such that they should be elevated to administrative expense status ahead of the secured claim of IRS in

of the petition."

the Chapter 7 case or IRS priority status under § 724(b).

Accordingly, having determined that the rental claims are not § 503(b) administrative expenses, they are not entitled to priority status under § 507(a)(1). In turn, under the provisions of § 724(b), they would not be entitled to payment before the tax lien. Pursuant to the Order entered by this Court on March 21, 1986, the Trustee has been directed to distribute funds to other individuals holding § 507 priority claims. In light thereof, there being no further priority claims before the Court to distribute under § 724(b)(2), the IRS is entitled to distribution of the remaining funds. Such distribution will deplete the available funds held by the Trustee and leave the claims for rent, as well as the claims of all other general unsecured creditors, unsatisfied.

An appropriate Order will issue.