**In re TRI–L CORPORATION, dba Best Western Inn of Richfield, Debtor.**

**Bankruptcy No. 81C–02084.**

United States Bankruptcy Court,
D. Utah.

Aug. 21, 1986.

---

David E. Leta, Blake D. Miller, Hansen, Jones, Maycock & Leta, Salt Lake City, Utah, for itself as applicant.

Vernon L. Hopkinson, Watkiss & Campbell, Salt Lake City, Utah, for Robison.

K.L. McIff, Jackson, McIff & Mower, Richfield, Utah, for Valley Builders.

Scott W. King, Salt Lake City, Utah, for Lundgren-Prestwich Outdoor Advertising.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### CASE SUMMARY

This matter came before the Court on November 21, 1985 on the trustee's objection to the administrative expense claim of the law firm of Hansen, Jones, Maycock & Leta, attorney for the debtor. The Court is called upon to decide whether legal services performed postconfirmation for a reorganized Chapter 11 debtor are entitled to an administrative expense status under Sections 503(b)(2) and 507(a)(1) when the plan aborts and the case is converted to Chapter 7. This Court concludes that under the facts of this case such fees are entitled to a Chapter 11 administrative expense priority.

### FACTS AND PROCEDURAL BACKGROUND

There is no dispute between the parties concerning the relevant facts. On June 11, 1981, Tri-L Corporation filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 12, 1982, the Court entered an order approving the employment of Roe & Fowler as counsel for debtor. David E. Leta, then a partner of Roe & Fowler, was principally responsible for the representation of debtor in this

case. On June 25, 1982, the Court entered an order confirming the debtor's amended plan of reorganization. The effective date of the plan was August 1, 1982. Article IX of the plan provided:

### Retention of Jurisdiction

The court shall retain jurisdiction of this Chapter 11 case pursuant to and for the purposes set forth in § 1127(b) of the Code and to:

1. Determine the allowance or disallowance of claims and interests;

2. Fix allowances of compensation and other administrative expenses; and

3. Adjudicate such other matters as may be set forth in the Order of Confirmation.

By order dated August 9, 1982, the debtor's counsel was awarded interim compensation and reimbursement for fees and costs, as an administrative expense, in the net amount of $18,522.43 for the period between May 27, 1981 and June 4, 1982. Of the $18,522.43 administrative expense awarded debtor's counsel, only $13,451.80 was paid. Pursuant to Section 1129(a)(9) the debtor agreed to pay, and counsel agreed to accept, the balance of $5,070.63 at a later date with interest payable at the rate of 10 percent per annum.[1]

On November 22, 1982, David E. Leta withdrew from the firm of Roe & Fowler and joined the firm of Hansen, Jones, Maycock & Leta. On July 11, 1983, this Court entered an order approving the substitution of David E. Leta and the firm of Hansen, Jones, Maycock & Leta as counsel for the debtor.

Subsequent to the effective date of the plan, the debtor operated its business pursuant to the terms and conditions of the plan and the applicable provisions of the Bankruptcy Code. The debtor continued to file monthly financial reports with the Court and on one occasion filed a status report respecting its efforts to consummate the plan. After confirmation of the debt-

or's plan its counsel continued to represent the debtor and continued to provide legal services related to consummation of the plan.

On March 12, 1985, upon motions filed by two secured creditors, this Court entered an order converting the case to a case under Chapter 7. W. LaMonte Robison was appointed trustee by order dated March 13, 1985.

On September 10, 1985, Hansen, Jones, Maycock & Leta filed an application for interim compensation. The trustee objected to the application on the ground that postconfirmation fees are not entitled to a Chapter 11 administrative expense status. At the hearing on the application on September 30, 1985, this Court approved and allowed the applicant's fees and costs in the sum of $12,760.69, less payments already received of $2,665.36, for the period June 25, 1982 to March 11, 1985. At that time the Court instructed the trustee to notify all creditors that Hansen, Jones, Maycock & Leta asserted a Chapter 11 administrative expense status for its fees incurred after the effective date of the plan and prior to conversion to Chapter 7. Notice was duly given by the trustee and memoranda of law were filed by the trustee and one creditor, Valley Builders, Inc., opposing the application.

The Court heard oral argument from the parties on November 21, 1985 and the matter was taken under advisement. The Court now renders its decision as follows.

### DISCUSSION

■ Conceptually, an administrative expense claim is a kind of priority granted "to those who either help preserve and administer the estate or who assist with the rehabilitation of the debtor so that all creditors will benefit." *In re Coal-X Ltd. "76"*, 60 B.R. 907, 912 (Bkrtcy.D.Utah 1986), quoting *In re Armorflite Precision, Inc.*, 43 B.R. 14, 16, Bankr.L.Rep. (CCH)

---

1. In connection with this contested matter, Hansen, Jones, Maycock & Leta has withdrawn its

claim for interest.

¶ 70,041 (Bkrtcy.D.Me.1984), *aff'd* 48 B.R. 994 (D.Me.1985). Section 503(b) is silent as to the point in time at which the expenses of a debtor in a reorganization case cease to be accorded first priority administrative expense status. *In re Frank Meador Buick, Inc.*, 59 B.R. 787, 791, 14 B.C.D. 451, Bankr.L.Rep. (CCH) ¶ 71,122 (Bkrtcy. W.D.Va.1986). The language of Section 503(b)(1)(A) and (B) refers instead to "actual, necessary costs and expenses of preserving the *estate*," and "any tax incurred by the *estate*."

Several courts have denied postconfirmation expenses an administrative expense priority under Section 503(b) on the ground that the "estate" exists only until confirmation of a plan under Section 1129, at which time all of the property of the estate vests in the debtor and the estate itself ceases to exist. *See e.g., United States v. Redmond*, 36 B.R. 932, 934, Bankr.L.Rep. (CCH) ¶ 69,832, 10 C.B.C.2d 1428 (D.Kan.1984) (since the bankruptcy estate is no longer being administered after confirmation, taxes which accrue postconfirmation are not incurred as actual, necessary costs and expenses of preserving the estate pursuant to § 503(b)(1)(B)); *In re Frank Meador Buick, Inc.*, 59 B.R. at 791 (§ 503(b) did not afford administrative expense status to claim for postconfirmation rent); *In re Barker Medical Co., Inc.*, 55 B.R. 435, 436 (Bkrtcy.M.D.Ala.1985) (postconfirmation judgment against debtor not a cost of administration because administration of the estate ended with confirmation of plan); *In re Westhold Manufacturing, Inc.*, 20 B.R. 368, 371–72, 9 B.C.D. 181, 6 C.B.C.2d 1068 (Bkrtcy.D.Kan.1982) (taxes incurred by the debtor postconfirmation are not taxes "incurred by the estate" under § 503). Under those decisions, the various creditors' postconfirmation claims were treated the same as prepetition claims when the cases were converted to Chapter 7 pursuant to Section 348(d), which states:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, *other than a claim specified in section 503(b) of this title*, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition. (Emphasis added.)

As the emphasized portion of the statute indicates, administrative expenses are expressly excepted from the operation of Section 348(d). *See generally* 2 COLLIER ON BANKRUPTCY ¶ 348.05, at 348–6 (15th ed. 1986).

■ Postconfirmation attorneys' fees are not governed by Section 503(b)(1)(A) and (B), which the courts applied in the foregoing cases, but by Section 503(b)(2),[2] which makes no reference to the "estate," but instead provides an administrative expense priority for "compensation and reimbursement awarded under section 330(a)."[3] Thus the cases cited above, which include those relied upon by the trustee, are inapposite.

■ When the plan of reorganization was confirmed and property of the estate vested in the reorganized debtor, the reorganized debtor was free to employ attor-

---

**2.** Section 503(b)(2) provides:
After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
(2) compensation and reimbursement awarded under section 330(a) of this title [....]

**3.** Section 330(a) provides:
(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

neys and other professional persons without obtaining authority from the bankruptcy court to do so. *See* 11 U.S.C. §§ 327(a), 1107(a) (only the Chapter 11 debtor in possession and trustee require court approval to employ professional persons). *Cf. In re Auto West, Inc.*, 43 B.R. 761 (D.Utah 1984) (reorganized debtor sought and obtained court approval for special counsel's employment). It follows that unless the bankruptcy court could and did retain jurisdiction to determine allowances of professional fees, such fees would not be "awarded under Section 330(a)" and would not constitute an administrative expense excepted from Section 348(d).

■ The confirmation of a Chapter 11 plan does not automatically terminate the jurisdiction of the bankruptcy court. *See In re A.J. Mackay Co.*, 50 B.R. 756, 13 B.C.D. 557, 13 C.B.C.2d 95 (D.Utah 1985). The Code clearly contemplates retention of jurisdiction by the bankruptcy court after confirmation. *Matter of Tilco, Inc.*, 558 F.2d 1369, 1372, 2 B.C.D. 293, 7 C.B.C. 243 (10th Cir.1977) (Act case). *See* 11 U.S.C. § 350(a); Bankruptcy Rule 3022 (the court always retains the power to render a final decree closing the case). Moreover, the court may expressly retain jurisdiction over the plan, during its consummation, under a provision of the plan itself or the order of confirmation. *See* 5 COLLIER ON BANKRUPTCY ¶ 1142.01[1], at 1142–4 to 1142–5 (15th ed. 1986); 11 REMINGTON ON BANKRUPTCY § 4648, at 467–68 (K. Hayes rev. ed. 1961). In the present case, the plan contained a reservation of jurisdiction to "[f]ix allowances of compensation and other administrative expenses." The Court must consider the appropriateness of

that reservation in light of the priority sought in this application.

■ A reservation of jurisdiction beyond what is necessary to effectuate the plan of reorganization is beyond the power of the bankruptcy court. *Reese v. Beacon Hotel Corp.*, 149 F.2d 610, 611 (2d Cir.1945). The bankruptcy court cannot obtain that power merely by inserting a provision in the plan or order of confirmation reserving jurisdiction. *In re Flatbush Ave.-Nevins St. Corporation*, 133 F.2d 760, 762 (2d Cir.1943). In *Claybrook Drilling Company v. Divanco*, 336 F.2d 697, 700–01 (1964), decided under Chapter X of the former Bankruptcy Act, the Court of Appeals for the Tenth Circuit discussed the role of retained jurisdiction:

> The order of confirmation stated that the court retained jurisdiction. Although it is proper for the court to superintend and enforce the application of the plan of reorganization, the ultimate purpose of reorganization is to let the corporation go forward under its own power in the usual ways of business without judicial restraint or interference. Thus a court may retain jurisdiction, after confirmation, to guarantee that the plan of reorganization is complied with, but it may not keep the corporation in "perpetual tutelage" by exercising control over all aspects of the corporate conduct or by assuming jurisdiction over controversies between the reorganized corporation and third parties.

(footnotes omitted).[4]

■ Pursuant to Section 1142(a),[5] the plan proponent, in this case the debtor, is

---

4. One author has stated:

> Until there is a final decree and the case is closed, there should probably be no restriction or collapsing of the bankruptcy court's jurisdiction over postconfirmation matters, and the postconfirmation jurisdiction should be coextensive with the preconfirmation jurisdiction, except that such jurisdiction should not imply that the court may keep the reorganized entity under its continuing supervision or retain jurisdiction over ongoing business affairs of the reorganized debtor.

J. Anderson, CHAPTER 11 REORGANIZATIONS § 15.05, at 15–11 to 15–12 (1985), *citing* Festersen, *Retained Jurisdiction Under Chapter X of the Bankruptcy Act: Why Not? Or, How to Have Your Cake and Eat It Too*, 7 Creighton L.Rev. 492 (1974).

5. Section 1142(a) provides:

> Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry

required to "carry out" the plan of reorganization, which normally includes the following:

1. Presenting the order of confirmation;

2. Insuring that the notice of confirmation is sent to creditors;

3. Distributing the deposit or other moneys to be disbursed upon confirmation;

4. Objecting to claims and preparing a final list of creditors and interest holders in each class;

5. Preparing and filing a final account of the administration of the estate;

6. Preparing necessary documents, if needed, to transfer the assets of the debtor corporation to the reorganized corporation or any entity receiving the assets under the plan;

7. Preparing the corporate documents, if needed, to form the reorganized entity, to complete any merger or consolidation, or to complete any other transaction contemplated under the plan;

8. Preparing pleadings, if necessary, to erase or modify liens in accordance with the plan;

9. Filing reports with the court concerning the action taken by the debtor and the progress made in the consummation of the plan;

10. Substantially consummating the plan;

11. Filing any modifications to the plan after confirmation, if necessary (but not after substantial consummation); and

12. After completion of all matters and after substantial consummation, moving the court for a final decree and closing the case.[6]

These postconfirmation matters are substantial and may be as time-consuming and difficult as confirming the plan. In the present case it is undisputed that the postconfirmation professional services rendered by Hanse, Jones, Maycock & Leta were performed in aid of the consummation of the plan and pursuant to its directives.[7] Under these circumstances it is proper to reserve jurisdiction under the plan and allow an administrative claim for postconfirmation attorneys' fees. *See* 6A COLLIER ON BANKRUPTCY ¶ 10.07[1], at 37 (14th ed. 1977).

### CONCLUSION

The basic purpose of Chapter 11 is to rehabilitate the debtor through a restructuring of its debts under a plan of reorganization. It is contrary to the purposes of the Code and the judicial function for the bankruptcy court to retain jurisdiction over every aspect of the reorganized debtor. Nevertheless, the court must retain some jurisdiction after confirmation to see that the plan is consummated. Attorneys' services are often required in order to carry out the provisions of a plan. Whether or

out the plan, and shall comply with any orders of the court.

**6.** J. Anderson, *supra* note 4, at § 15.05, pp. 15–11 to –12.

**7.** In its application, the postconfirmation services of Hansen, Jones, Maycock & Leta were summarized as follows:

[1]. The preparation of postconfirmation orders and documents relating to or arising out of confirmation of the Debtor's Plan of Reorganization.

[2]. The conclusion and documentation of a dispute between the Debtor, Valley Builders, Zion's Plumbing, and Prudential Federal Savings & Loan which was pending in the District Court for Sevier County, Utah at the time the Plan was confirmed.

[3]. Assisting the Debtor negotiate and satisfy obligations due to Prudential Federal Savings & Loan under the stipulated judgment entered in the Sevier County District Court action.

[4]. Assisting the Debtor reply to inquiries made by the court, and the estate administrator, respecting consummation of the Debtor's Plan.

[5]. Opposing efforts by Prudential Federal Savings & Loan and by Valley Builders to convert or dismiss the Debtor's case, including preparation for and attendance at a hearing on the motions.

[6]. Representing and advising the Debtor on matters relating to its responsibilities after conversion of the case from a Chapter 11 to a Chapter 7.

not postconfirmation attorneys' fees are entitled to a Chapter 11 administrative expense priority if the case is converted to Chapter 7 depends upon the provisions of the plan of reorganization and the order of confirmation. In this case, the postconfirmation claim of Hansen, Jones, Maycock & Leta was a proper administrative expense incurred in the consummation of the debtor's plan of reorganization and shall be allowed under Section 330(a).