### In re FRANK MEADOR BUICK, INC., Debtor.

### Ray DOBBINS, Appellant,

v.

### FRANK MEADOR BUICK, INC., et al., Appellees.

Bankruptcy No. 7-80-00436.
Civ. A. No. 7-86-0266(R).

United States District Court,
W.D. Virginia,
Roanoke Division.

Sept. 22, 1986.

---

Jonathan M. Apgar, Willis, Damico and Apgar, Roanoke, Va., for appellant.

Mr. George A. McLean, Jr., Roanoke, Va., Trustee.

Mr. David A. Furrow, Hutcherson, Rhodes & Furrow, Rocky Mount, Va., Joseph D. Logan, III, Plunkett & Logan, Kenneth M. Sorenson, Asst. U.S. Atty., Roanoke, Va., S. Martin Teel, Jr., Attorney, Tax Div., U.S. Dept. of Justice, Washington, D.C., for appellees.

## MEMORANDUM OPINION

TURK, Chief Judge.

In this appeal, the appellant Ray Dobbins contests the order of the United States Bankruptcy Court for the Western District of Virginia entered on April 14, 1986. 59 B.R. 787. The bankruptcy court ruled that Dobbins' claim for rent incurred by the debtor, Frank C. Meador Buick, Inc. (Meador), was not entitled to priority status under 11 U.S.C. § 507(a)(1). The court held that tax and rent obligations incurred after confirmation of a Chapter 11 Plan and prior

to conversion to a case under Chapter 7 were not administrative expenses under 11 U.S.C. § 503(b). Accordingly, the court ordered the Trustee to distribute the balance of the debtor's funds to the Internal Revenue Service, effectively eliminating Dobbins' chance to recover on his claim for rent.

■ When considering an appeal from the bankruptcy court, the District Court is constrained to accept the lower court's findings of fact unless they are clearly erroneous. The district court must, however, make an independent determination of the law. *Gilbert v. Scratch'n Smell, Inc.*, 756 F.2d 320 (4th Cir.1985); *Grundy Nat. Bank v. Stiltner*, 58 B.R. 593, 594 (Bankr.W.D.Va.1986). For the reasons set forth below, finding no clear error in the bankruptcy court's findings, its decision is affirmed.

## BACKGROUND

Meador filed a Chapter 11 petition on April 23, 1980. On December 18, 1980 the bankruptcy court confirmed the proposed reorganization plan. Following confirmation, the reorganized company became delinquent in payment of federal income withholding taxes, Federal Insurance Contribution Act taxes, and Form 940 Federal Unemployment Act taxes. As reflected in properly perfected tax liens filed on June 14 and June 16, 1982, the company owed the IRS a total of $57,877.38. Also among its post-confirmation debts, Meador incurred a debt of $60,830.54 representing rent owed to Dobbins.

On June 28, 1982 the court approved the bulk sale of Meador's inventory to Charles H. Johnson. The proceeds of the sale, $70,000.00, were placed in escrow pending a further court order as to the validity, amount, and priority of all liens. On September 27, 1982 the court ordered partial distribution to two secured creditors, thereafter leaving $40,599.09 in the Trustee's hands. On May 27, 1983 the court directed the trustee to distribute funds as follows: to the bankruptcy court to cover postage expenses; to the IRS for the cost of a court ordered appraisal of Meador's inventory; and to various attorneys to cover counsel fees. The court directed further *pro rata* distribution for administrative expenses to Dobbins and the IRS, among others. *In re Frank Meador Buick, Inc.*, 31 B.R. 28, 31 (Bankr.W.D.Va.1983). Following an appeal, this court affirmed the distribution order on January 11, 1984. The IRS appealed this court's decision to the United States Court of Appeals for the Fourth Circuit.

On July 17, 1984, while the appeal was pending, the bankruptcy court, on Meador's motion, converted the Chapter 11 to a case under Chapter 7. Reacting to the conversion, the IRS moved the Fourth Circuit to dismiss the appeal as moot and to remand it for consideration in the lower courts. The Fourth Circuit granted the motion on October 23, 1984 and vacated all previous orders "to the extent that they determine the priority and status of the Internal Revenue Service." The Court of Appeals remanded the case to the bankruptcy court to consider the effect of the conversion on the IRS claim and further ruled that "[t]he bankruptcy court may reinstate its judgment pertaining to the priority and status of this [the IRS] claim *or it may enter any other order it deems appropriate.*" (emphasis added)

On remand, while reconsidering the status of the IRS claim, the bankruptcy court also reconsidered the status of Dobbins' claim for rent. Exploring the statutory and judicial definitions of administrative expenses, the court concluded that neither rent nor taxes incurred post-confirmation are administrative in nature. Claims for such post-confirmation costs would therefore receive no priority under the Bankruptcy Code. Accordingly, the court determined that Dobbins' rent claim must fall behind the IRS claim, whose superior status was secured by properly perfected liens. Insofar as the amount secured by the tax liens exceeded the amount remaining in escrow, the bankruptcy court's ruling prevented Dobbins from recovering any money for the rent owed to him.

Dobbins takes issue with the bankruptcy court's decision on two grounds. First, he asserts that the District Court exceeded the authority of the Fourth Circuit's remand when it reconsidered the status of the rent claim as part of its inquiry into the status of the IRS tax claim. Second, he contends that post-confirmation rent is an administrative expense under the meaning of 11 U.S.C. § 503. Dobbins argues, therefore, that under 11 U.S.C. § 507(a)(1) his claim deserves priority ahead of, or at least along with, the tax claim.

## ANALYSIS

■ The court will first consider whether the bankruptcy court exceeded the scope and authority of the Fourth Circuit's remand. In its remand, the Fourth Circuit presented the bankruptcy court the option of either reinstating its previous judgment as to the status and priority of the IRS claims or entering any other order that it deemed appropriate. The bankruptcy court obviously deemed it appropriate to reconsider the status of Dobbins' rent claim while it reconsidered the effect of the conversion to Chapter 7 on the IRS claims. Indeed, it would have been logically impossible for the bankruptcy court to reconsider the IRS claim without also reconsidering Dobbins' rent claim. The IRS and Dobbins each claim a share of a finite fund of money. Any action that would reallocate the size or reorder the priority of either party's share would necessarily effect the size or priority of the other party's share. Regardless of whether the bankruptcy court would have ignored or discussed the rent claim, in either case a decision altering or shifting the IRS claim had to somehow effect Dobbins' claim. Not only, therefore, was it appropriate for the bankruptcy court to reconsider the rent claim in the course of considering the tax claim, it was inevitable that it would do so.

The court now considers the bankruptcy court's refusal to classify the unpaid rents as administrative expenses. Under 11 U.S.C. § 507(a)(1) administrative expenses of the estate in bankruptcy receive first priority in distribution. The Code defines administrative expenses to include "the actual, necessary costs of preserving the estate." 11 U.S.C. § 503(b)(1)(A). A court has held that rents incurred post-petition are among the necessary expenses envisaged by § 503(b)(1)(A). *In re Kors, Inc.*, 13 B.R. 683, 684 (Bankr.D.Vt.1981). Most taxes that a debtor might incur post-petition also receive priority status as administrative expenses. 11 U.S.C. § 503(b)(1)(B).

■ When however, the debtor incurs costs not merely post petition but also post-confirmation they are not, and cannot, be classified as administrative expenses. After confirmation of a plan under Chapter 11, administration of the estate ends and the estate ceases to exist. *In re Barker Medical Company, Inc.*, 55 B.R. 435, 436 (Bankr.M.D.Ala.1985). Thus, it is impossible to classify taxes or rents that accrue post-confirmation as administrative expenses for the simple reason that after confirmation there is no longer an estate to administer. *See United States v. Redmond*, 36 B.R. 932, 934 (D.Kan.1984), *aff'g, In re Westholt Mfg., Inc.*, 20 B.R. 368 (Bankr.D.Kan.1982).

■ Relying on the fact that Meador incurred both the taxes and rent post-petition, Dobbins contends that both claims are entitled to share a priority position. Dobbins ignores that his own claim for rent, and the IRS claim for taxes, arose not merely post-petition but post-confirmation as well. As a result, neither claim may receive priority status as an administrative expense; both are ordinary creditor claims.

■ Once it is clear that neither claim here is for an administrative expense it becomes relatively simple to determine the correct order of payment under Chapter 7. The IRS claim, which is secured by liens, should be paid pursuant to 11 U.S.C. § 724(b)(3). There are neither senior liens nor, as discussed earlier, administrative expenses that would precede the tax claim. *See* 11 U.S.C. § 724(b)(1), (2). Unlike the IRS, which took measures to protect its claim, Dobbins has done nothing to secure

his rent claim. The tax claim should therefore be payed first. Payment of the tax claim will completely exhaust all funds held by the trustee, unfortunately leaving Dobbins' rent claim unsatisfied.

An order affirming the opinion of the bankruptcy court will be entered this date.