# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

_____

No. 01-20950
_____

In The Matter Of: OLYMPIC NATURAL GAS CO,

Debtor

RANDY W WILLIAMS, Trustee,

Appellant,

versus

MORGAN STANLEY CAPITAL GROUP INC,

Appellee.

Appeal from the United States District Court
For the Southern District of Texas

June 28, 2002

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Trustee Randy W. Williams (the "Trustee") appeals the district court's judgment affirming

the bankruptcy court's grant of summary judgment in favor of Morgan Stanley Capital Group, Inc.,

("Morgan Stanley"). On appeal, we must decide whether the Trustee is precluded from avoiding

certain payments made by the debtor to Morgan Stanley pursuant to 11 U.S.C. § 546(e) of the

Bankruptcy Code (the "Code"), which immunizes from avoidance settlement payments made by a forward contract merchant.

In 1995, Morgan Stanley entered into a Natural Gas Sales and Purchase Contract (the "Contract") with GM Hydrocarbons, Ltd., who later assigned its interest in the Contract to Olympic Natural Gas Co. and Olympic Gas Marketing, Inc. (collectively, "Olympic"). Pursuant to this Contract, each month the parties would enter into a series of individual transactions, in which each would act sometimes as buyer and sometimes as seller, after agreeing on the price, quantity, timing, and delivery point for the natural gas. Because the parties conducted numerous transactions each month, acting as both buyer and seller, the Contract provided for a single net payment to be made in settlement of each month's trading.

From January to May of 1997, a series of trades and payments occurred between Morgan Stanley and Olympic. At the end of each month's transactions, both parties paid the gross amount due to one another. Pursuant to the Contract's terms, Olympic transferred to Morgan Stanley cash in the amount of $817,919.60 and $1,000,000 on April 11 and April 15, 1997, in payment for the February transactions. Then, on April 29, 1997, Olympic transferred $10,850 to Morgan Stanley, representing the gross amount owing from the March transactions. Finally, on May 22, 1997, Olympic paid $48,000 to Morgan Stanley, in payment for the April transactions.

On June 6, 1997, an involuntary Chapter 7 petition was filed against Olympic Natural Gas Co., and on June 13, 1997, Olympic Gas Marketing, Inc., filed a voluntary Chapter 11 petition. The bankruptcy court subsequently consolidated both cases under Chapter 7 and appointed the Trustee. The Trustee filed a complaint against Morgan Stanley seeking avoidance of the $1.8 million in payments made by Olympic to Morgan Stanley for the February, March, and April natural gas

-2-

transactions (collectively, the "Payments"). The Trustee alleged that the Payments were avoidable

as preferential transfers under 11 U.S.C. § 547(b)[1] or fraudulent transfers under 11 U.S.C. § 548.[2]

As a defense, Morgan Stanley argued that the Payments were "settlement payments" made by a

"forward contract merchant" within the meaning of 11 U.S.C. § 546(e), and were therefore exempt

from avoidance. The bankruptcy court agreed, and granted summary judgment in favor of Morgan

Stanley. The district court subsequently affirmed the decision of the bankruptcy court, and the

Trustee now appeals.

We review the district court's decision, as well as the underlying bankruptcy court

determination, de novo. *In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001).

Section § 546(e) of the Code provides forward contract merchants with a complete defense

to avoidance claims brought by a Trustee.[3] 11 U.S.C. § 546(e). In order to qualify for the

exemption, a party must establish both that it is a "forward contract merchant," and that the transfer

sought to be avoided is a "settlement payment." *Id.* Thus, in order to determine whether the Trustee

---

[1]11 U.S.C. § 547(b)(4)(A) provides:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
    (4) made--
        (A) on or within 90 days before the date of the filing of the petition.
11 U.S.C. § 547(b)(4)(A).

[2]The Trustee voluntarily dismissed its § 548 fraudulent transfer claims prior to this appeal.

[3]11 U.S.C. § 546(e) provides:
    Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee *may not avoid* a transfer that is a margin payment, as defined in section 101, 741, or 761 of this title, or *settlement payment*, as defined in section 101 or 741 of this title, made by or to a commodity broker, *forward contract merchant,* stockbroker, financial institution, or securities clearing agency, that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.
11 U.S.C. § 546(e) (emphasis added).

can avoid the Payments made to Morgan Stanley, we must analyze whether Morgan Stanley is a "forward contract merchant" and whether the contested Payments are "settlement payments" as provided in 11 U.S.C. § 546(e).

First, we must decide whether Morgan Stanley is a "forward contract merchant." In order to do so, we must determine whether it entered into a "forward contract" with the debtor. The term "forward contract" is defined in 11 U.S.C. § 101(25), which provides:

> "forward contract" means a contract *(other than a commodity contract)* for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or byproduct thereof, with a maturity date more than two days after the date the contract is entered into, including, but not limited to, a repurchase transaction, reverse repurchase transaction, consignment, lease, swap, hedge transaction, deposit, loan, option, allocated transaction, unallocated transaction, or any combination thereof or option thereon.

11 U.S.C. § 101(25) (emphasis added). The parties have offered opposing interpretations of this definition, focusing on the inclusion of the parenthetical "other than a commodity contract" in the first line. The Trustee contends that the transactions at issue in this case were not "forward contracts," but rather ordinary commodity contracts, which are exempted from the definition of "forward contract" by the parenthetical. In essence, the Trustee claims that the Bankruptcy Code divides the "world of commerce in commodities" into three parts: (1) futures, or on-exchange financial instruments; (2) forwards, or off-exchange financial instruments; and (3) ordinary commodity contracts (*i.e.* contracts for the commercial supply of goods with a future delivery date). Morgan Stanley, on the other hand, argues that § 101(25)'s parenthetical simply reinforces the established practice of distinguishing off-exchange forward contracts from on-exchange futures, or

-4-

"commodities" contracts, and that no third category of "ordinary commodity contracts" exists.

We agree with Morgan Stanley, and conclude that the transactions here fall within the scope of § 101(25)'s definition of forward contract. The commodities market is divided into only two categories: (1) on-exchange futures transactions; and (2) off-exchange forward contracts. *See* 5 COLLIER ON BANKRUPTCY ¶ 556.02[2], at 556-5 (Lawrence P. King ed., 15th ed. 2002) ("Thus, the terms 'commodity contract' and 'forward contract,' taken together, seamlessly cover the entirety of transactions in the commodity and forward contract markets, whether exchange-traded, regulated, over-the-counter or private."). The term "commodity contract" "encompasses purchases and sales of commodities for future delivery on, or subject to the rules of, a contract market or board of trade, and leverage transactions." *Id.* at 556-4. In contrast, "forward contracts" are "contracts for the future purchase or sale of commodities that are not subject to the rules of a contract market or board of trade." *Id.* at 556-5.

With this background in place, we believe § 101(25)'s parenthetical reinforces the commonly-understood distinction between on- and off-exchange transactions, by clarifying that not all contracts with a delayed-delivery component are included within the definition of "forward contract." By exempting "commodities contracts" from the definition of "forward contract" in § 101(25), the Code retains a distinct definition of "commodities contracts." *See* 11 U.S.C. § 761(4) (defining "commodity contract").[4] We decline to adopt an interpretation of "commodity contract" in § 101(25)

---

[4]11 U.S.C. § 761(4) provides: "commodity contract" means--
    (A) with respect to a futures commission merchant, contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade;
    (B) with respect to a foreign futures commission merchant, foreign future;
    (C) with respect to a leverage transaction merchant, leverage transaction;
    (D) with respect to a clearing organizati on, contract for the purchase or sale of a

that would conflict with a definition set forth in another portion of the Code. *See United States Nat'l Bank of Oregon v. Indep. Ins. Agents of America, Inc.*, 508 U.S. 439, 460 (1993) ("Presumptively, identical words used in different parts of the same act are intended to have the same meaning.") (internal quotations and citations omitted).

Furthermore, our interpretation is in accord with the traditional definition of "forward contract." Although the Trustee points to the fact that the transactions at issue here contemplated actual delivery as evidence that they are not true "forward contracts," courts in other circuits have repeatedly stated that one of the distinguishing characteristics of a forward contract is that the parties expect to make actual delivery. *See, e.g.*, *Nagel v. ADM Investor Servs., Inc.*, 217 F.3d 436, 441 (7th Cir. 2000) (when eventual delivery of commodity is reasonably assured, contract is a forward); *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 579 (9th Cir. 1982) (forward contract is "predicated upon the expectation that delivery of the actual commodity by the seller to the original contracting buyer will occur in the future"); *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 990 (8th Cir. 1999) ("[T]he contemplation of physical delivery of the subject commodity is the hallmark of an unregulated cash-forward contract.").

In sum, we see no reason to adopt the interpretation the Trustee advocates, and distinguish between "financial" forward contracts, and "ordinary purchase and sale" forward contracts, when the

---

commodity for future delivery on, or subject to the rules of, a contract market or board of trade that is cleared by such clearing organization, or commodity option traded on, or subject to the rules of, a contract market or board of trade that is cleared by such clearing organization; or
(E) with respect to a commodity options dealer, commodity option.

statutory language makes no such distinction.[5] Thus, we conclude that Morgan Stanley is a "forward contract merchant," and that the transactions between the parties were in fact "forward contracts."

We must next consider whether the Payments at issue were "settlement payments." Section 101(51A) provides: "'settlement payment' means, for purposes of the forward contract provisions of this title, a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, *or any other similar payment commonly used in the forward contract trade*." 11 U.S.C. § 101(51A) (emphasis added).[6] We believe that the definition of "settlement payment" in § 101(51A) encompasses payments made in settlement of forward contract transactions, such as the Payments at issue here. *See* 5 COLLIER ON BANKRUPTCY ¶ 546.06[2][b], at 546-48 (stating that "settlement payment" should be interpreted very broadly); *Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.),* 952 F.2d 1230, 1240 (10th Cir. 1991) (advocating broad interpretation of "settlement payment," and holding that consideration paid to shareholders for their stock in connection with a leveraged buyout would qualify as settlement payments under § 546(e)). We reject the Trustee's

---

[5]The Trustee argues that the immunization provision in § 546(e) was intended only to prevent disruptions in the securities markets, and therefore off-exchange sales transactions between private parties should not be exempt from avoidance, as they are not conducted on an exchange, and do not impact the financial derivatives market. The legislative history of § 546(e) indicates that the provision was intended "to minimize the displacement caused in the commodities and securities markets in the event [of] a major bankruptcy affecting those industries." H. R. REP. NO. 97-420, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583. More specifically, Congress sought to prevent the "ripple effect" created by "the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected industry." *Id.* By including references to both the commodities and the securities markets, it seems clear that Congress meant to exclude from the stay and avoidance provisions both on-market, and the corresponding off-market, transactions.

[6]The Bankruptcy court concluded that the Payments were not "settlement payments" as defined in 11 U.S.C. § 741(8). Thus, we will analyze only whether the Payments fit within the definition of "settlement payments" included in 11 U.S.C. § 101(51A).

argument that in order to be exempt from avoidance, a "settlement payment" must be made on a financial derivative contract, and be cleared or settled through a centralized system. *See In re Resorts Int'l, Inc.*, 181 F.3d 505, 515-16 (3d Cir. 1999) (holding payment for securities made in conjunction with leveraged buyout is settlement payment, regardless of whether clearing agency was involved). Thus, we hold that the Payments made pursuant to the Contract were "settlement payments" as defined in the Code.

Because we conclude that the Payments made by the debtor were settlements payments made to a forward contract merchant, we hold that pursuant to § 546(e), the Trustee cannot seek avoidance of these Payments. For the foregoing reasons, we AFFIRM the district court's order affirming the bankruptcy court's grant of summary judgment in favor of Morgan Stanley.