**In re BETHLEHEM STEEL CORPORATION, et al.,**
**Debtors.**

**Bethlehem Steel Corporation, Plaintiff,**

**v.**

**BP Energy Company and Conoco Inc., Defendants.**

**Bankruptcy Nos. 01–15288(BRL) to 01–15302(BRL), 01–15308(BRL) to 01–15315(BRL).**
**Adversary No. 02–2562.**

United States Bankruptcy Court,
S.D. New York.

March 19, 2003.

Weil, Gotshal & Manges, by George A. Davis, Christina P. Hsu, Angela Ferrante, New York City, for Debtors.

Kelley, Drye & Warren, LLP, by James S. Carr, Jonathan K. Cooperman, Antonia

F. Giuliana, Keith H. Wofford, New York City, for BP Energy Co., Inc.

Locke, Liddell & Sapp, LLP, by J. Michael Dorman, Patricia Williams Prewitt, Houston, TX, for ConocoPhillips Company.

Scarcella, Rosen & Slome, LLP, by Thomas R. Slome, Garden City, NY, for Conoco, Inc.

## MEMORANDUM DECISION RE: ADMINISTRATIVE CLAIMS

BURTON R. LIFLAND, Bankruptcy Judge.

Before the court are motions for summary judgment brought by Bethlehem Steel Corporation and its subsidiaries (collectively "Bethlehem" or the "Debtors") and defendants BP Energy Company ("BP") and ConocoPhillips Company ("Conoco" and together with BP, the "Defendants") with respect to contracts for the purchase and sale of natural gas used as fuel in Bethlehem's steel plants.

**Background**

On October 15, 2001 (the "Petition Date"), Bethlehem commenced cases under chapter 11 of title 11, United States Bankruptcy Code ("Bankruptcy Code"). Prior to the Petition Date, in October 2000, Bethlehem entered into two long-term purchase contracts (the "Contracts"), with BP and Conoco to obtain natural gas for use as fuel in its steel plants and mills. Each contract contains provisions that obligated BP and Conoco to sell, and Bethlehem to purchase, quantities of natural gas at the greater of market or a specified "floor" price, i.e., minimum prices for which gas would be sold.[1]

---

1. Floor contracts are instruments used by buyers to obtain payment—through "puts"—from gas suppliers to assume the risk of falling gas prices and to manage a buyer's volatile energy costs. The "put" gives the seller the right to obligate a buyer to purchase specified quantities of gas at specified "floor" prices over the course of the contract. In exchange for the "put," the seller provides the buyer with a cash payment or other consider-

Under the BP Contract, Bethlehem committed itself to purchase 15,000 million British thermal units ("MMBtus") of natural gas per day at the greater of (a) $3.70 or (b) the New York Mercantile Exchange ("NYMEX") closing price. The Conoco Contract obligated Bethlehem to purchase 16,000 MMBtus of natural gas per day at the greater of (a) 3.765 or (b) the market price of natural gas as reflected by Columbia Gulf (Rayne) *Inside FERC* Index plus $0.065.

Bethlehem used the gas purchased pursuant to the Contracts at its Sparrow's Point (Maryland) plant, and Burns Harbor (Indiana) plant. Both Contracts were set to expire by their own terms on December 31, 2002.

On the Petition Date, the Debtors filed, among other things, an *ex parte* motion (the "Utility Motion"), pursuant to section 366 [2] of the Bankruptcy Code, seeking an order preventing utility companies from terminating services to Bethlehem based on Bethlehem's filing of its chapter 11 petitions. The Utility Motion specifically sought an order providing that each utility

company ("Utility Company"), identified on exhibit A to the Utility Motion, be forbidden "to alter, refuse or discontinue service to, or discriminate against, the Debtors, or require the payment of a deposit or other security or require accelerated payment terms in connection with postpetition Utility Services." *See* Utility Motion. Bethlehem elected to list both BP and Conoco as "Utility Companies" in its Utility Motion [3] and represented that it would "continue to pay all postpetition obligations, including utility bills, *as billed and when due.*" *See* Utility Motion, ¶ 24 (emphasis added). As a result this court entered an order (the "Utility Order"), granting the relief requested in the Utility Motion and authorizing the Debtors "to pay on a timely basis in accordance with their prepetition practices all undisputed invoices in respect of postpetition Utility Services rendered by the Utility Companies." The Utility Order further provided that:

any undisputed charge for postpetition Utility Service furnished by a Utility

---

ation. When Bethlehem entered into the Contracts, it received $5.5 million in put payments from BP and Conoco.

**2.** Section 366 provides that

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of

the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366. The legislative history to this section explains that it "is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 350 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5846, 6306.

**3.** Conoco subsequently filed an objection to the Utility Order, asserting, *inter alia*, that it was not a "utility." That objection was withdrawn although Conoco reserved its rights to contest its designation as a utility and to contend that the Conoco Contract is a forward or commodity contract as defined under the Bankruptcy Code.

Company to the Debtors following the commencement of these cases shall constitute an administrative expense of the Debtors' chapter 11 cases in accordance with sections 503(b) and 507(a)(1) of the Bankruptcy Code.

*See* Utility Order at p. 2.

For approximately five months, BP and Conoco continued to supply Bethlehem with gas and Bethlehem, without disputing them, paid the invoices as billed.[4] On February 28, 2002, Bethlehem filed a motion with this Court pursuant to section 365 of Bankruptcy Code, seeking an order authorizing retroactive rejection of the Conoco and BP Contracts as of March 5, 2002 (the "Effective Date"). Bethlehem sought to reject the Contracts because the "floor" prices under the Contracts were higher than the prices at which Bethlehem could procure an alternative source of supply. BP and Conoco objected to the Effective Date because it was retroactive. Following a hearing on March 14, 2002 and by order dated May 9, 2002 (the "Rejection Order"), this Court approved the relief requested by Bethlehem. BP appealed the Rejection Order, and by order dated November 14, 2002, the United States District Court for the Southern District of New York affirmed this court's Rejection Order. *See BP Energy v. Bethlehem Steel Corp.*, 2002 WL 31548723 (S.D.N.Y. Nov.15, 2002).

On June 25, 2002, Bethlehem filed a complaint pursuant to sections 365(g), 503(b), 542 and 549(a) of the Bankruptcy Code seeking to obtain (1) a determination that the allowed amounts of the administrative claims of BP and Conoco for post-petition gas deliveries made to Bethlehem pursuant to the Contracts are to be determined based upon the rates at which BP

and Conoco sold natural gas to other large non-contract industrial customers over the same period rather than the substantially higher minimum floor prices provided under the Contracts; (2) an order directing BP and Conoco to refund to Bethlehem the amount that exceeds the allowed administrative claim of each such supplier, with interest; (3) an avoidance of the overpayment for postpetition gas deliveries made by Bethlehem to BP and Conoco; and (4) a declaration that Bethlehem is entitled to interest on the overpayment. According to Bethlehem, the purchases of natural gas from BP and Conoco in the time period between the Petition Date and the Effective Date resulted in Bethlehem being overcharged by BP and Conoco, $2,314,995 and $2,651,200, respectively, due to the fact that the Defendants charged Bethlehem the contract price and not the prevailing market price reflected by the NYMEX settlement price of the spot rate. Bethlehem seeks a refund of the difference. Pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Rules"), Bethlehem seeks summary judgment on its claims.

Defendants cross move for summary judgment seeking either 1) an order directing Bethlehem to pay BP and Conoco the contract price for the period postpetition under section 503(b)(1)(A) or, in the alternative, 2) to characterize the payments made by Bethlehem to BP and Conoco as "settlement payments" that are protected from avoidance under sections 546(e) and 556.

**Discussion**

Under Rule 56, summary judgment should be granted when "the pleadings, depositions, answers to interrogatories,

---

**4.** Bethlehem, having given notice of its intention to reject, did not pay BP the final invoices (the "Unpaid Invoices") for gas delivered to Bethlehem in February and March. BP has counterclaimed for payment of the Unpaid Invoices.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a court, having drawn all reasonable inferences in favor of the non-movant, determines that no reasonable fact-finder could find in favor of the non-moving party, granting summary judgment is appropriate. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8,10 (2d Cir.1989).

■ Section 365(a) of the Bankruptcy Code enables a debtor in possession to "assume or reject any executory contract." 11 U.S.C. § 365(a). The purpose of section 365(a) is to allow the debtor to benefit from those contracts that are profitable and reject those which are unprofitable, thereby maximizing the value of the debtor's estate. *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1098 (2d Cir. 1993); *In re Wedtech Corp.,* 72 B.R. 464, 467 (Bankr.S.D.N.Y.1987). Pending the decision to reject, the non-debtor entity to the contract is entitled to payment as an administrative expense for goods and services provided during the period of time before the debtor assumes or rejects the contract. *See* 11 U.S.C. § 503(b)(1)(A). *See also Matter of Washington–St. Tammany Electric Cooperative, Inc.,* 111 B.R. 555, 558 (Bankr.E.D.La.1989) *citing In re Thatcher Glass Corp.,* 59 B.R. 797 (Bankr. Conn.1986). However, section 503(b) limits the valuation of administrative expenses to the actual and necessary cost of preserving the estate. *Sharon Steel Corp. v. Nat. Fuel Distribution Corp.,* 872 F.2d 36, 39 (3d Cir.1989). There is an initial assumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate. *Matter of Washington–St. Tammany Electric Cooperative, Inc.,* 111 B.R. at 559 *citing Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 783 F.2d 1283, 1285 (5th Cir.1986). The presumption in favor of the contract price is viable unless the debtor introduces convincing evidence to the contrary. *Matter of Washington–St. Tammany Electric Cooperative, Inc.,* 111 B.R. at 559.

Bethlehem asserts that the Defendants are entitled to administrative expense payments at the prevailing market rate for natural gas and not the rates set forth in the Contracts. On the other hand, BP and Conoco contend that they are entitled to administrative expense payments at the rates set forth in the Contracts because, among other things, Bethlehem has waived its rights and is estopped from contesting the Contract price. I agree with the Defendants. In light of the Utility Order and Bethlehem's actions during the postpetition, pre-rejection period, Bethlehem has waived its right and is estopped from challenging the rates charged under the terms of the Contract.[5]

---

**5.** Both Bethlehem and the Defendants raised several issues in support of their motions, including whether the Defendants were appropriately designated as "utility companies;" whether the Defendants are "forward contract merchants" and whether the Contracts are "forward contracts" within the meaning of the Bankruptcy Code; whether the contract price includes the "put" payments; whether an identifiable applicable market rate can be established; whether alternative suppliers were available; and whether the contract rate constitutes an actual and necessary expense of preserving Bethlehem's estate. I need not reach these issues in light of

The bankruptcy court is essentially a court of equity. *See National Labor Relations Board v. Bildisco & Bildisco,* 465 U.S. 513, 527, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Its proceedings are inherently proceedings in equity, and it "applies the principles and rules of equity jurisprudence, including principles of estoppel." *See Eastern Air Lines v. Insur. Co. of State of Pennsylvania (In re Ionosphere Clubs),* 85 F.3d 992, 999 (2d Cir. 1996) *citing Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

The Second Circuit has established that any assertion of a legal right by a debtor that is inconsistent with the debtor's prior words or acts is improper as a matter of law, where a non-debtor relied upon such prior words or acts. *In re Ionosphere Clubs, Inc.,* 85 F.3d at 999 (2d Cir.1996); *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir.1996) ("Equitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought").

In addition, where a party has "advanced an inconsistent factual position in a prior proceeding, and the prior inconsistent position was adopted by the first court in some manner" that party is judicially estopped from asserting the inconsistent position. *See Wight v. Bankamerica Corp.,* 219 F.3d 79, 89 (2d Cir.2000) *citing AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.,* 84 F.3d 622, 628 (2d Cir.1996).

Here, the Debtors, in support of their request for the Utility Order with injunctive provisions, represented that the gas deliveries under the Contracts were essential to the Debtors' business operations and that any interruption in service would "substantially diminish or eliminate the Debtors' chances for a successful reorganization." *See* Utility Motion at ¶ 16. The Debtors' requested that they be authorized to provide "adequate assurance of payment" as required under section 366 in the form of payment as an administrative expense to the Utility Companies relying upon their "prepetition history of prompt *and full payment* of outstanding utility bills . . ." *See* Utility Motion at ¶ 17 (emphasis added). Throughout the postpetition pre-rejection period, the Debtors paid the invoiced amount for gas deliveries from BP and Conoco—seemingly in compliance with the Utility Order. BP and Conoco, apparently in reliance upon these payments at the contract rate, refrained from asserting any rights they may have had to challenge the Utility Order or to terminate the Contracts.[6] BP and Conoco reasonably relied on the Utility Order and representations made by Bethlehem that they would be adequately protected through administrative expense designation for payments on the same basis as those made prepetition (prompt and full

---

my finding that Bethlehem is estopped from challenging the Contract rates.

**6.** BP and Conoco argued that the Contracts constitute "forward contracts under sections 362 and 556 of the Bankruptcy Code. *See* 11 U.S.C. 362(b)(6), 556"; *see also In re Olympic Natural Gas,* 294 F.3d 737 (5th Cir.2002). I need not determine that issue, because even if the Contracts are not "forward contracts" the Defendants maintained rights to seek relief under the Bankruptcy Code, such as moving to compel assumption or rejection or relief from the automatic stay. *See* 11 U.S.C. §§ 362, 365.

payment of outstanding utility bills). The Defendants were not offered the choice of receiving a lesser market rate or the opportunity to exercise any termination rights they may have had. Accordingly, the Debtors are estopped from arguing against the contract rate. The Defendants may retain the contract rate payments already received and have allowed administrative expense claims for unpaid delivered gas at the rate set forth in the Contracts.

For all of the above reasons, Bethlehem's motion for summary judgment is denied and Defendants' motions for summary judgment are granted.

Settle an order consistent with this decision.