**In re HNRC DISSOLUTION CO., f/k/a Horizon Natural Resources Company, et al., Debtor.**

**No. 02–14261.**

United States Bankruptcy Court, E.D. Kentucky, Ashland Division.

May 30, 2006.

Gregory R. Schaaf, Lexington, Kentucky, for Lexington Coal Company.

Douglas T. Logsdon, Lexington, Kentucky, and Karen Lee Turner, Philadelphia, Pennsylvania, for Zurich American Insurance Company.

### *MEMORANDUM OPINION*

WILLIAM S. HOWARD, Bankruptcy Judge.

### 1. *Introduction*

Lexington Coal Company, LLC ("Lexington Coal"), one of the purchasers of assets of the former Debtors, has objected

to the application for allowance of administrative expense filed by Zurich American Insurance Company ("Zurich"). Lexington Coal filed its original objection (Doc. # 5492, "the Objection") on February 18, 2005. An Agreed Scheduling Order (Doc. # 6467) was entered on June 30, 2005. Pursuant to the terms of that order, Lexington Coal filed a Supplemental Objection (Doc. # 6646) on July 29, 2005. Zurich filed a Response to Supplemental Objection (Doc. # 6853, "the Response") on August 31, 2005, and Lexington Coal filed a Reply to Response to Supplemental Objection (Doc. # 6918, "the Reply") on September 15, 2005.

The matter was first taken under submission by entry of an Order of Submission (Doc. # 6997) on October 14, 2005, but on November 21, 2005 the court entered an order requiring the parties to tender joint stipulations and a list of exhibits (Doc. # 7071). The Joint Stipulation and List of Exhibits (Doc. # 7180) was filed on January 24, 2006, and an Order of Submission (Doc. # 7232) was entered on February 21, 2006. This matter is now under consideration for decision.

### 2. *Factual and procedural background*

The parties have entered into extensive joint stipulations which are incorporated herein by reference. The facts set out below are consistent with those stipulations.

On December 29, 2004 Zurich filed an Administrative Expense Request Form designated Claim No. 20675 seeking an administrative expense claim in the amount of $44,744,067.00 ("the Claim"). The Claim is based on alleged post-petition deductible losses under insurance contracts with Zurich and two of its affiliated companies, American Zurich Insurance Company ("American Zurich") and Steadfast Insurance Company ("Steadfast"), that were assumed by the Debtors for workers' compensation, commercial auto, and general liability coverage. Zurich did not enter an appearance in the Debtors' cases. Neither Lexington Coal nor any of the other purchasers of the Debtors' assets assumed the Zurich policies.

The Claim is made up of: (i) the Administrative Expense Request Form, (ii) an Addendum to Administrative Expense Request Form ("the Addendum"), (iii) Exhibit A, titled "The Insurance Contracts," and (iv) Exhibit B, titled "Collateral Charge Summary." The Addendum states the Claim was filed "as a protective measure to ensure payment of administrative expenses incurred by Zurich in the event that the surety bonds and other security provided by the Debtor to Zurich to secure payment of insurance deductibles owed by the Debtors to Zurich are ultimately dishonored."

The Collateral Charge Summary relates to a "Current Ultimate Loss Projection" totaling $46,858,757.00, which Zurich attached to its Response. The Claim does not provide the underlying estimates, calculations and/or actuarial assumptions that were used to arrive at the Ultimate Loss Projection. Ultimate loss projections are actuarial projections requiring actuarial judgment which are used to forecast total deductible liability on policies where the insured has agreed to be responsible for such liabilities and such liability extends into the future. This is especially true for workers' compensation coverage which can extend years past policy expiration. In connection with the Program, Zurich and the Debtors entered into separate Deductible Agreements governing the terms and conditions for payment of deductible amounts on claims under workers' compensation policies.

Zurich's history of billings to the Debtors for paid losses, paid expenses and premiums is shown in statements of account.

These do not include reserves that have been set by Zurich, or claims that have been incurred but not yet reported. Actuaries do not use the figures contained in the statements of account to determine the Ultimate Loss Deductible. Zurich's billing system has two components, premium billing and deductible billing. Neither has any direct relevance to the calculation of ultimate loss projections except to the extent that paid deductible bills are deducted from the ultimate loss in calculating the net outstanding ultimate deductible loss.

On September 5, 2003, the Debtors filed their Motion for Order Authorizing Assumption of Certain Insurance Contracts ("the Motion to Assume," Doc. # 1785). On September 23, 2003, the court entered the Order Granting Motion of Debtors for Order Authorizing Assumption of Certain Insurance Contracts ("the Assumption Order," Doc. # 1860). Pursuant to the Assumption Order, the Debtors assumed the "Program" and "Contracts" in the Motion to Assume. The policies to be assumed were described in Exhibit A to the Motion to Assume. Zurich attached a list of applicable policies to the Claim. That list is identical to the list attached to the Motion to Assume. The "Program" was defined in the Motion to Assume as Zurich's provision of workers' compensation, business automobile, general liability and other coverages as part of an insurance program for the Debtors, their predecessors and affiliates, along with related deductible agreements.

Earlier in 2003 the Debtors negotiated a renewal of their coverage with Zurich. Zurich had made known its perceived need for additional collateral. Zurich originally sought $15 million, but eventually agreed to accept collateral in the amount of $10 million. Zurich agreed to receive this amount following the effective date of what was then going to be a plan of reorganization. The payment date was changed when the Debtors sold all their assets and ceased to exist. As of September 2003, when the Debtors assumed the Program and the Contracts, they had paid all amounts Zurich had billed to them, but had not paid a renewal premium.

All of the Debtors' insurance coverage was subject to renewal on June 29, 2004. Zurich chose not to renew the insurance policies as it had the right to do under the policies' terms. Zurich and the Debtors then negotiated terms for extending the coverage period. On June 25, 2004, the court entered the Stipulation and Amended Order Authorizing Assumption of Insurance Contracts ("the Amended Order", Doc. # 3381). The footnote on Exhibit A to the Amended Order states: "Upon information and belief, this [policy] list includes all policies to be assumed pursuant to this Agreed Amended Order. However, the Debtors reserve the right to amend or supplement this list from time to time." The policies listed are identical to those listed with the Motion to Assume.

Footnote 3 of the Amended Order states: "The projected total liability of the Debtors that will be due and owing to Zurich over the lifetime of the payments under the Insurance Contracts is in excess of $10,000,000, and Zurich retains the right to assert an administrative claim for the balance of any claims under the Insurance Contracts. The Debtors reserve the right to object to any additional administrative claim asserted by Zurich." The annual policies would have expired on June 28, 2004, but the Amended Order allowed for extensions on a month-to-month basis. The final extension expired on September 28, 2004 at midnight.

3. *Discussion*

 Requests for administrative expenses are authorized under Bankruptcy Code section 503. Section 503(b) provides

in pertinent part, "[A]fter notice and a hearing, there shall be allowed administrative expenses, ... including ... the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). In order to qualify as an "actual, necessary" administrative expense, a debt must have arisen from a post-petition transaction with the debtor, and have directly and substantially benefitted the estate. *In re Sunarhauserman, Inc.,* 126 F.3d 811, 816 (6th Cir.1997) provides a two-part analysis in applying this provision:

> [A] debt qualifies as an 'actual, necessary' administrative expense only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate. The benefit to the estate test limits administrative claims to those where the consideration for the claim was received during the post-petition period.

*Id.* at 816. A claimant has the burden of proving entitlement to an administrative expense by a preponderance of the evidence. Further, "[t]he claimant must demonstrate that the benefit is more than a speculative or potential benefit." *In re Kmart Corp.,* 290 B.R. 614, 621 (Bankr. N.D.Ill.2003).

> [T]here must be a strict construction of the terms 'actual' and 'necessary' therefore requiring that the estate actually receives a real benefit from the transaction, before administrative priority will be granted on claims against the estate.... The focal point of the allowance of a priority is to prevent unjust enrichment of the estate, not to compensate the creditor for its loss.... Thus, a court looks to the actual benefit to the estate and not the loss sustained by a creditor.

*In re Globe Metallurgical, Inc.,* 312 B.R. 34, 40 (Bankr.S.D.N.Y.2004)(internal quotes and citations omitted). *See also In re WorldCom, Inc.,* 308 B.R. 157 (Bankr. S.D.N.Y.2004).

 A debt is not entitled to administrative expense priority treatment simply because the right to payment arises post-petition; the claimant must demonstrate the benefit that inured to the estate. *In re Highland Group, Inc.,* 136 B.R. 475 (Bankr.N.D.Ohio 1992); *In re Amarex,* 853 F.2d 1526, 1530 (10th Cir.1988). Administrative expenses are generally allowed only after they have been incurred. *In re Microfab, Inc.,* 105 B.R. 161, 170 (Bankr. D.Mass.1989). Expenses incurred post-confirmation are not entitled to administrative expense priority treatment. As stated by the court in *In re Frank Meador Buick, Inc.,* 65 B.R. 200 (W.D.Va.1986),

> When, however, the debtor incurs costs not merely post petition but also post-confirmation they are not, and cannot, be classified as administrative expenses. After confirmation of a plan under Chapter 11, administration of the estate ends and the estate ceases to exist. *In re Barker Medical Company, Inc.,* 55 B.R. 435, 436 (Bankr.M.D.Ala.1985). Thus, it is impossible to classify [costs] that accrue post-confirmation as administrative expenses for the simple reason that after confirmation there is no longer an estate to administer. *See United States v. Redmond,* 36 B.R. 932, 934 (D. Kan.1984[)], *aff'g, In re Westholt Mfg., Inc.,* 20 B.R. 368 (Bankr.D.Kan.1982).

*Id.* at 203. *See also Guy v. Terex Corp.,* No. 91–3687, 1992 WL 88978 (6th Cir. April 30, 1992). Zurich has not provided any authority for its proposition that a claimant is entitled to administrative expense priority for claims that arise after the confirmation of a plan and after the estate ceases to exist.

 A casualty loss claim such as would be paid under a Zurich policy must have arisen from a post-petition accident or oc-

currence, and the claim must actually be paid prior to confirmation in order to qualify as an administrative expense. *See In re Eli Witt Co.*, 213 B.R. 396 (Bankr. M.D.Fla.1997), in which the debtor's workers' compensation insurer made an administrative expense claim for deductibles which would be payable in the future. The court stated:

> [T]he majority of the Insurance Company's administrative expense claim represents its estimation of claims it will be required to pay in the future, but will not actually have paid by confirmation. The Insurance Company estimates these future claims against the Debtor based on its own statistical analysis of the likelihood such claims will occur. Section 502(c) provides that contingent or unliquidated claims shall be estimated for the purpose of allowance if the liquidation would unduly delay the administration of the case. There is nothing in this record which would enable this Court to estimate these future claims, therefore, this portion of the Insurance Company's claim cannot be allowed in any amount and should be disallowed without prejudice.

*Id.* at 400. The court in *In re Oread, Inc.*, 269 B.R. 871 (Bankr.D.Kan.2001), employed similar reasoning:

> Because granting administrative expense status requires that the claim arise from providing an actual benefit, the court in *Eli Witt* disallowed estimated amounts claimed by the insurer for injuries suffered in both prepetition and postpetition accidents. Even for injuries suffered in postpetition accidents, if the claim had not been presented by the time of plan confirmation, it could not be characterized as an actual claim, necessary to the preservation of the estate. The court further noted that the record

was devoid of evidence by which these yet to be presented claims could be estimated for purposes of allowance under § 502(c), apparently rejecting the insurer's statistical analysis of the likelihood of such claims.

*Id.* at 879.

■ Zurich contends that these holdings actually support its claim for administrative expense treatment of post-confirmation deductible payments because the *Eli Witt* court disallowed the claims for payment of future deductibles without prejudice. From this Zurich extrapolates a determination that such claims are necessarily payable as administrative expenses. At this point, Zurich has provided nothing more than "its own statistical analysis of the likelihood such claims will occur" for the purpose of estimating its claim, and the court finds such analysis no more supportive of its claim than the *Eli Witt* court did. The court does not see how Zurich can ever provide anything more than a statistical analysis until the events that precipitate a claim for deductibles occur. These events, by necessity, will occur post-confirmation.

Further, the court is not convinced that estimation is even proper in this instance. Estimation of claims under section 502(c) is performed "for purpose of allowance under this section." 11 U.S.C. § 502(c). Requests for payment of administrative expenses are not made pursuant to section 502. A form of estimation of claims may take place in the context of post-petition claims. *See In re MacDonald*, 128 B.R. 161, 167 (Bankr.W.D.Tex.1991). However, as pointed out in *In re Indian Motocycle Co., Inc.*[1], 261 B.R. 800 (1st Cir. BAP 2001), the *MacDonald* court recognized that section 502(c) " . . . . facially applies

---

1. The debtor's name is reported as "Indian Motocycle Co., Inc." The history of the case

shows that in other instances it was reported as "Indian Motorcycle Co., Inc."

only to pre-petition claims. Post-petition claims are governed by [§ ] 503." *Id.,* quoting *In re MacDonald,* 128 B.R. at 165. The *Indian Motocycle* court went on to observe that the *MacDonald* court had found that "the **estimation procedures of § 502(c) might be appropriate to evaluate the feasibility of a Chapter 11 plan.**" *Id.* at 810(emphasis added). The holding that estimation might be appropriate for evaluating the feasibility of a Chapter 11 plan is instructive in that it places administrative expense claims where they belong, i.e., in the post-petition, pre-confirmation period of estate administration.

As Lexington Coal points out, Zurich chose not to participate in the plan process until after the Plans had been confirmed. The creditors and other parties in interest in this case were thus necessarily deprived of the opportunity to factor in a huge administrative expense claim that would have had a major effect on the consideration of the feasibility of the Debtors' proposed Plans. Lexington Coal asserts that Zurich should have participated in the Debtors' cases and requested an estimation of its administrative expense claim prior to the confirmation process. It further asserts that Zurich's request for estimation is neither appropriate nor timely under these circumstances. This court agrees.

In consideration of all the foregoing, it is the opinion of this court that Zurich's application for allowance of administrative expense should be denied. An order in conformity with this opinion will be entered separately.